The People of the State of New York, Respondents, *v.*
The Northern Railroad Company, John L. Lovering,
Frederick Clapp, A. W. Chamberlin, and C. C. Chamber-
lin, impleaded with others, Appellants.

In an action, in the nature of *quo warranto*, the complaint alleged the
insolvency of a corporation, mortgage of its franchise and property to
trustees to secure certain bonds, surrender of possession of its road to the
trustees, foreclosure of the mortgage and sale thereon to such trustees, the
incorporation of the bondholders under a new name, pursuant to a special
act of the legislature, conveyance of the road and property to the new cor-
poration, pursuant to an order of the Supreme Court, and its possession
and operation of the road since, and that the original corporation had
neglected to pay its debts, and entirely suspended its ordinary and lawful
business ever since the surrender to the trustees. The complaint further
charged that certain defendants named, claiming to be stockholders of the
original corporation, had usurped the franchise, pretended to elect direc-
tors, and commenced an action to obtain title and possession of the road.
The answer recited the mortgage, foreclosure and sale, incorporation of the
new company, surrender and conveyance to, and possession and operation
of the road by it; but alleged that the decree of foreclosure and judgment
for deficiency in that action, the act of the legislature and order of the
Supreme Court, surrender and conveyance, and the incorporation of the
new company, were all obtained and procured fraudulently, and without
valid notice to or service upon the corporation or defendant, and were
void; that the original corporation was not dissolved; that the trustees
held the property as mortgagees in possession and for several years after
the foreclosure, and after the passage of the act of the legislature had
made their reports in the name of the original corporation, and that valu-
able property of that corporation was not included in the mortgage, and
had never passed from it. It also contained numerous allegations of
fraud and misconduct on the part of the trustees and various persons in
connection with the conduct of the affairs of the corporation, both before
and after the new organization, and denied every allegation of the com-
plaint not specifically admitted. The answer further alleged that the
defendants answering were *bona fide* stockholders, had elected directors
in good faith, their action had been commenced under advice of counsel,
and they had never undertaken to obtain possession of the road, property
or franchise otherwise than through the courts.
*Held* (Foster, Ingalls and Sutherland, JJ., *contra*), that no issue of fact
was formed by the pleadings; and judgment, as prayed in the complaint,

and also appointing a receiver of the original corporation, was properly rendered at Special Term, on a motion for judgment upon the pleadings, or for other or further relief.

(Argued January, 1870; decided March 17, 1870.)

APPEAL from an order of the General Term of the Supreme Court, in the fourth district, affirming a judgment entered by the direction of a single judge at Special Term, in that district.

On the 29th of May, 1867, upon presenting to a justice of the Supreme Court the complaint duly verified, leave was granted to the Attorney-General, pursuant to section 430 of the Code, to bring this action. Afterward, the defendants above named, who are appellants, appeared; but whether the summons was served on any other of the defendants named in the complaint, the record does not show.

The complaint alleged, in substance, that the Northern Railroad Company was a corporation, created by an act of the legislature of this State for the purpose of constructing a railroad; and, in pursuance of said act, the corporation constructed a railroad from Ogdensburgh to Rouse's Point, at an expense of about $6,000,000, which was opened in October, 1850, and continued to be used by the corporation until October, 1854. The nominal capital was $2,000,000, of which only about $1,600,000 was ever paid in; and the residue of the means to build the road was obtained upon two classes of bonds of the company, known as first and second mortgage bonds. The first class amounting to $1,500,000, was secured by two mortgages of different dates, upon the railroad and all the property of the corporation, real and personal, and its franchises, and was executed to three trustees, one of which mortgages bears date in February, and the other in April, 1850.

The second class of bonds were likewise secured by two mortgages upon all the property and franchises, to three other trustees subject to the security for the first mortgage bonds, and which were dated, the one in December, 1851, and the other in April, 1854, and all the mortgages were duly recorded.

The corporation was insolvent in October, 1854, and then surrendered possession of all its property, real and personal, to the trustees, for the second mortgage bondholders, and ever since that time the corporation had remained insolvent and neglected to pay its notes and other evidences of debt, and entirely suspended its ordinary and lawful business.

The mortgages to secure the second class of bonds were foreclosed, judgment of foreclosure having been rendered in April, 1856, and pursuant thereto, all the property of the corporation of every kind (except one bond for $100,000), was sold to the second mortgage trustees, in trust for the second mortgage bondholders, subject to the first mortgages; and the road continued to be operated by the second mortgage trustees until August 1st, 1865.

Pursuant to an act entitled "An act to authorize the formation of a corporation in place of the Northern Railroad Company dissolved," passed March 31, 1857; and an act amending the same, passed April 8, 1864, the second mortgage bond holders organized a new corporation, by the name of the "Ogdensburgh and Lake Champlain Railroad Company," and were the owners of the railroad, with its franchises and property; and pursuant to an order of the Supreme Court made at a General Term thereof, on the 1st day of August, 1865, they received a conveyance of all the railroad property and franchise and the possession thereof, and have ever since managed its affairs and fulfilled the purpose for which the franchise was originally granted.

Subsequently, in pursuance of an act of the legislature, the last named company had issued preferred stock to the amount of $2,000,000, of which $1,500,000 was to extinguish the first mortgage bonds, and the residue to pay the floating debt of the company and to furnish cars and locomotives.

It then charged, that the persons named in the complaint as defendants, with divers others unknown, falsely claimed that the Northern Railroad Company was an actual, legal and existing corporation, and owners of a railroad, and that they could obtain possession thereof, if they were furnished with

money, and had thereby pursuaded large numbers of the stockholders of the Northern Railroad Company to pay them large sums of money, amounting to $4,000 and over, for such alleged purpose.

The persons named as defendants, and the other persons whose names were unknown, had usurped for more than twelve months last past, and still usurp and use without any lawful warrant or charter, the franchise of being such Northern Railroad Company, and by that name sue and claim that such pretended corporation owns the property then in the possession of the Ogdensburgh and Lake Champlain Railroad Company.

Said defendants, in March, 1866, held a pretended election of directors of said Northern Railroad Company, and threatened to hold another; and had, in the name of the Northern Railroad Company and Frederick Clapp, commenced an action in the Supreme Court against the Ogdensburgh and Lake Champlain Railroad Company and others, to obtain title and possession of the before mentioned railroad and property, and these acts tended to impair the benefit of the franchise, and to depreciate the market value of the stock of the Ogdensburgh and Lake Champlain Railroad Company, and to hinder it from carrying out the purposes of the aforesaid act of the legislature.

The complaint then asked the judgment of the court:

"1st. Adjudging and deciding that said Northern Railroad Company has remained insolvent for more than one whole year; has for one year and more neglected to pay or discharge its notes and other evidences of debt, and for more than one year has suspended the ordinary and lawful business of such corporation; has surrendered all the rights and privileges, and franchises, granted by any act of incorporation, or acquired under any laws of this State; and has been dissolved; and that it be forever excluded from all corporate rights, privileges, and franchises."

"2d. That the several persons named or referred to as defendants in this complaint, have occupied and used, within

this State, the franchises of a corporation, contrary to the laws of this State, to the injury of the people of the State, and in violation of law ; and that they, and each, and every of them, be forever excluded, prohibited, restrained, and enjoined by the order of this court from occupying, setting up, or exercising any of the corporate rights, privileges, or franchises formerly possessed by the said Northern Railroad Company, and that a temporary injunction to the above effect may be immediately granted."

" 3d. That said persons named as defendants, or referred to as such, be fined in the sum of $2,000 each, for their said usurpation, pursuant to section 441 of the Code, and may be compelled to pay the costs of this action."

" 5th. That the people of the State of New York, may have in this action such other, or such different, or such further relief, as may be agreeable to law and equity."

The defendants, who are appellants, put in an answer to the complaint, which professed to give a history of the organization of the Northern Railroad Company. Stated the issuing of the first and second series of mortgage bonds, their aggregate amount, and set out as part of their answer, the several mortgages in full. It alleged that the mortgage which was last issued to secure the second mortgage bonds, was fraudulently made and issued ; the transfer of the road to the trustees of the second mortgage bonds alleged in the complaint was a transfer of the possession to them as mortgagees ; and, thereafter, they, at all times, held the road and personal property, and franchises, only as mortgagees in possession ; and were bound to account for the issues and profits thereof to the railroad company. It alleged divers frauds committed against the company by the trustees and others, who conspired with them to cheat and defraud the railroad company. That fraudulent debts were created by them while so using the road ; they kept to their own use large sums of money which came to their hands as such trustees, for the use of the road and of the bondholders ; caused the books of the company, and of the trustees to be

conveyed and kept out of this State, and refused to return them, or to let them be inspected. The foreclosure of the second mortgage was fraudulent and void, on the ground that the trustees caused the summons to be served upon a person, who they well knew, was not an officer of the company, or in its employ, but was in the employ of the trustees; and fraudulently concealed from those interested in the road as stockholders and officers, the knowledge that such suit was commenced, and that proceedings were being had therein. They denied that the acts of the legislature mentioned in the complaint, by which it was claimed that the corporation was dissolved, and by which the Ogdensburgh and Lake Champlain Railroad Company was claimed to have succeeded to their rights and franchises, were procured by the said Northern railroad, or with its knowledge, or assent in any way; and they alleged that the legislature had no power by enactment, to dissolve the corporation, or as against it, without its consent, to transfer any of its rights or franchises to another corporation. They alleged various other acts of the trustees, in connection with other persons, and of the Ogdensburgh and Lake Champlain Railroad Company, in violation of the rights of the Northern Railroad Company, of which the persons above named as defendants were stockholders, by which they were injured, and by which large sums of money were diverted from the proper use of the Northern Railroad Company. That the said trustees fraudulently caused other actions to be commenced, and fraudulently caused the process to be served on their own employes, who were not officers, or in the employ of the company; and caused such suits to be prosecuted to judgment without being defended, and without the knowledge of the company, whereby unjust judgments were obtained against it. That the proceeding by which the Supreme Court, at General Term, granted the order transferring all the rights and franchises of the Northern Railroad to the Ogdensburgh and Lake Champlain Railroad Company were fraudulent and void. That such proceedings were had upon a service of the papers therein upon an

employe of the said Ogdensburgh and Lake Champlain railroad, and who was not in any way connected with the Northern Railroad Company, and such proceedings were fraudulently kept secret from that corporation, and were continued and conducted without its knowledge.

That there was a large amount of the funds of the Northern Railroad Company in the hands of the trustees and of the Ogdensburgh and Lake Champlain Railroad Company, which should be accounted for and paid over to the Northern Railroad Company, and which would with the avails of the use of the road, enable it to continue the road in operation and pay all its just debts.    The answer then stated in separate paragraph : "*And these defendants deny each and every allegation and averment in the complaint in this action contained not herein specifically admitted,*" and averred as follows : "And these defendants, for a further and other defence to this action, aver that they are and have been directors of the said defendant, the Northern Railroad Company.    That the said company has never been legally dissolved, and has never forfeited its right as a corporation under the laws of the State of New York.    That these defendants were, at the time alleged in the said complaint, *bona fide* stockholders of the said Northern Railroad Company, having paid value for their said stock; and that these defendants, being such stockholders, and being advised by their counsel that the property and franchises of said Northern Railroad Company still belonged to the original stockholders of said company, subject only to such equitable rights as the first and second mortgage bondholders might be deemed to possess, did participate in an election and were duly elected directors of said Northern Railroad Company, and as such directors did commence an action in the Supreme Court of the State of New York against the Ogdensburgh and Lake Champlain Railroad Company, and against all others who were or could be interested in the questions involved, which action is now pending and undetermined.    That these defendants have never undertaken to obtain possession of the said railroad property

or franchises except upon a determination of the courts of this State, that they were entitled thereto. That such election of directors and such suit was had and brought in good faith, and for the simple purpose of determining by the courts of this State the rights of the stockholders of said Northern Railroad Company. That these defendants are pressing said action, so brought by them as aforesaid, to an early determination, to the end that all questions between them may be settled and determined. That the several issues in the said action brought by this defendant, the Northern Railroad Company, cannot be determined in this action unless the Ogdensburgh and Lake Champlain Railroad Company, said trustees in this answer named, and the other persons named as defendants in the action brought by this defendant, the said Northern Railroad Company, be made parties hereto, and these defendants insist that this action should be stayed until the determination of the said action brought by this defendant, the said Northern Railroad Company, wherein it will be determined which is the legally existing company, and entitled to the property and franchises of said road. And these defendants demand that it be adjudged and decreed that the present board of directors and officers of said Northern Railroad Company are the duly elected and proper representatives of said company, and that they are, as the representatives of said company, entitled to the immediate possession, management and control of said Northern railroad, and of all the rolling stock, fixtures and other corporate property, and also of all of the property of any kind or description acquired by said trustees while in possession of said road or by the said Ogdensburgh and Lake Champlain Railroad Company since they acquired possession thereof, and that for all the reasons in this answer contained, this action be dismissed with costs. And defendants ask such further and other order, judgment, decree or relief in the premises as to the court may seem just and proper in the premises."

The plaintiff gave notice, of thirteen days, that at a Special Term of the Supreme Court, to be held at the cham-

bers of Mr. Justice JAMES, it should, "upon the pleadings and proceedings in this action, and the records referred to in the complaint and answer, move the court for judgment, as prayed for in the complaint, or for such further or such other order as to the court may seem proper."

The hearing took place before Mr. Justice JAMES at an adjourned Special Term, at his chambers, on the 19th of May, 1868.

Previous to that time, the defendant gave notice to the plaintiff of a motion to be heard at that Special Term "upon the affidavit served, and on the pleadings and proceedings in the action for an order staying all further proceedings therein until after the trial, or final determination of the action referred to in said affidavit" (and which is also referred to in the said answer) in which the Northern Railroad Company and another are plaintiffs, and the Ogdensburgh and Lake Champlain Railroad Company and others are defendants, and for such other and further order as may be just. On the hearing of such last mentioned motion, the court at Special Term denied it with costs.

When the motion on the part of the plaintiff was brought on, the counsel for the defendant objected to the hearing *preliminarily*. 1st. That an application for judgment upon the pleadings could not be brought on as a non-enumerated motion. 2d. That such an application could only be made in a case triable by the court without a jury. 3d. That this was a common law action, and the defendants were entitled to a trial by jury. 4th. That before an application for judgment could be heard, the plaintiffs must show that the cause was at issue as to all the defendants, or that such of the defendants as had not answered were in default for not answering. The justice reserved the objections, and proceeded to hear the motion on its merits upon the pleadings and exhibits alone, and afterward rendered a judgment in favor of the plaintiffs " *upon the complaint and answer*," that the Northern Railroad Company had surrendered and forfeited all the rights, privileges and franchises granted by any act of incorporation, or acquired

under the laws of this State, and adjudged it to be dissolved. That the government of the State had, by the before mentioned act of March 31, 1857, accepted such surrender, and resumed the franchise of the said Northern Railroad Company. That the defendants, John L. Lovering, Frederick Clapp, A. W. Chamberlain and C. C. Chamberlain, were guilty of having usurped, within the State, the franchises of a corporation contrary to its laws, and that a fine of $500 be imposed upon them therefor. And it was further adjudged and decreed. that the defendants desist and refrain from occupying, using or claiming, or pretending to use, any franchise under the name of the Northern Railroad Company, or any other name, on the pretence of owning or having authority or control over the railroad extending from Ogdensburg to Lake Champlain; or from holding, or pretending to hold, any election of directors of any such company, or doing any act or thing as such corporation. That the plaintiff recover of the defendants the sum of $119.40 costs and disbursements of the action; and that William J. Averill be appointed receiver of the stock, property, things in action and effects of said Northern Railroad Company, on his giving security in the sum of $20,000.

The defendants excepted to the decision, that the plaintiffs were entitled to bring the cause to a hearing, as a non-enumerated motion, and without placing the same on the calendar.

Also to the decision, that the case was triable by the court at Special Term, and that the defendants were not entitled to a trial by jury. They also excepted to each and every part of the judgment rendered at the Special Term.

The General Term affirmed the judgment of the Special Term, and also the order refusing the stay of proceedings in the action. From both of which decisions the defendants appealed to this court.

*John K. Porter*, for the appellant.

*Wm. M. Evarts & Wm. C. Brown*, for the respondents.

LOTT, J.   Assuming that a denial by the defendants, in their answer, of each and every allegation and averment in the complaint in this action contained, not therein before specifically admitted, is sufficient to controvert the matters, if any, not so admitted, and put them in issue, it appears by an examination of its contents that no material fact is denied.

· It is true, that there is no admission in express terms, as alleged in the complaint " that ever since October, 1854, the said corporation has remained insolvent and neglected to pay its notes and other evidences of debt and entirely suspended the ordinary and lawful business of such corporation ;" but the statements and admission of the defendants incontrovertibly concede and prove each of those facts.   They admit the execution of certain mortgages by the corporation on its property as stated in the complaint, that certain persons were elected directors thereof on the 26th day of July, 1854, and that they on the 6th day of October, 1854, surrendered the possession of its property to the second mortgagees, who took possession thereof and its franchise, and ran and operated the road until on or about the 1st day of August, 1865 ; that it was then transferred to the Ogdensburgh and Lake Champlain Railroad Company, and that it had possession thereof at the time of the commencement of this action, that prior to such transfer, and on or about the 20th day of February, 1856, proceedings were instituted in the Supreme Court of this State against the said corporation for the foreclosure of the mortgages given by them, that a judgment decreeing · such foreclosure and directing the sale of the corporate property and the franchise of the company was, after an appearance by attorneys for the company, made and entered on the 8th day of April, 1856, that such sale was thereafter and on or about the 23d day of October, 1856, made to the said second mortgagees, and that a deed of the property was subsequently executed to them ; that the proceeds of sale were insufficient to satisfy the amount adjudged to be due, and that a deficiency amounting to upwards of a million of dollars, on the 19th day of December, 1865, remained unsatis

fied. They also state, that by an act of the legislature of this State passed on the 31st day of March, 1857, the holders of the second issue of bonds were authorized to form a corporation under the general railroad act and the several acts amendatory thereof, and that one was on or about the 1st day of December thereafter so formed by and under the name and style of the Ogdensburgh Railroad Company, and that directors thereof were duly elected, that by a subsequent act of the legislature duly passed on or about the 15th day of April, 1858, the said Ogdensburgh Railroad Company was declared a duly incorporated company in pursuance of the said act of 1857, and they aver that the said company has never been dissolved, and that it is entitled to all the property and privileges given to it by said act or belonging to it as a corporation, and to all the property in the hands of the said trustees, if any corporation could be authorized by law to receive said property, that, the said trustees continued in the actual and continued possession of said property after the organization of the said company, and that the owners of the said second issue of bonds claiming to act under the said act of 1857, and an act amendatory thereof, passed on the 8th day of April, 1864, proceeded to form and did on or about the 1st day of August, 1865, organize the said Ogdensburgh and Lake Champlain Railroad Company, and that the said company since that time have been, and were, at the time of putting in the said answer " in the actual possession, use and occupation of all of the corporate property and franchises of the said Northern Railroad Company," on a transfer thereof from the said mortgagees by the permission and in pursuance of an order of the Supreme Court. It is then stated that upon proceedings instituted by the holders of the first two mortgages for the foreclosure thereof, a judgment on or about the 12th day of December, 1859, was entered in the Supreme Court declaring the same to be valid and existing mortgages for the amount thereof, which by the terms thereof had become due on the 1st day of July, 1859.

After some further allegations not necessary to be noticed here, the following statement is made:

"And these defendants further aver, that on or about the 7th day of March, 1866, the stockholders of said Northern Railroad Company, in pursuance of a call for that purpose, met at Ogdensburgh in the county of St. Lawrence, for the purpose of electing directors of said company, said company not having elected directors for several years prior thereto, their property having been in the hands of the mortgagees as aforesaid, and thereupon proceeded to the election of, and did elect thirteen directors in pursuance of the charter and by-laws of the company; that they elected the defendant, Lovering, president, and also elected a treasurer and secretary."

These statements fully establish the allegations in the complaint, that the said Northern Railroad Company has ever since October, 1854, remained insolvent, and neglected to pay its evidences of debt, and been actually insolvent, and entirely suspended the ordinary and lawful business of such corporation; and the counsel of the appellants, in his points, states that the complaint and the answer both expressly allege, that the defendant's road was operated by trustees from 1854, to August 1st, 1865; the complaint and answer both also allege, that ever since August 1, 1865, the Ogdensburgh and Lake Champlain Railroad Company have carried on all the business of the said railroad, and the defendant's property and franchises have been in use by that company.

There can be no question upon those facts, that the plaintiff was entitled to a judgment declaring that the Northern Railroad Company had forfeited its charter, and that it should be dissolved.

It then remains to be considered, whether the answer of the defendant sets up any fact to prevent such a judgment. The principal and controlling ground relied on is, that the persons elected directors of the company, at the election held on the 26th day of July, 1854, were not eligible, because they did not own any of the capital stock of the said

company, and none of its stock was standing on its books in the names of said persons, or in the names of any or either of them, and that therefore they were not in fact, or in law, a legally elected board of directors of said company, and could not bind it; that the summons and complaint in the action commenced in February, 1856, for the foreclosure of the second mortgages above referred to, were served upon one Samuel C. F. Thorndike, who it is alleged "was the pretended treasurer of the said company in 1854, elected by said illegal directors as aforesaid, and who was not in 1856, and had not been for a long time prior thereto, an officer of said company, and who was, on the 27th day of February, 1856, the day upon which he was served with said summons and complaint, as appears from the judgment roll in said foreclosure suit, in the actual employ of the plaintiff in said action to foreclose said mortgages;" that neither of the defendants, nor any of the other stockholders of the company, nor any director or officer of the company "was served with, or notified of the commencement of said action;" and that the attorneys who appeared for and represented the company were employed by the said Thorndike at the instance, and on the employment in fact of the said plaintiff, and claim that such appearance "could not, and ought not to be allowed to prejudice or foreclose the rights of said company, or the stockholders thereof." And it is also alleged, that the referee who made the sale was the law partner of the attorneys of record for the plaintiffs and son of one of them; and some other acts tending to show irregular and improper action in the conduct of the proceedings and sale.

It is a sufficient and perfect answer to these objections and grounds of defence, that there is nothing in the charter of the company requiring the directors to be stockholders; that the person appointed treasurer was an officer *de facto*, and that the judgment after an appearance assuming it to have been procured as stated, was at most voidable, and not having been set aside or reversed, but remaining in full force and effect, it is conclusive, and cuts off all right of redemp-

tion by the company, and the title acquired under it is good in the parties claiming under it.

The facts stated by the defendants preclude an assumption or inference that those proceedings were unknown to any of them.   The allegation that a meeting for the purpose of electing directors was held on or about the 7th day of March, 1866, " said company not having elected directors for several years prior thereto, their property having been in the hands of the mortgagees as aforesaid," is an admission of the knowledge of the fact of such possession, and that the stockholders had for that reason not even elected directors to take charge or protect the interests of the company, and must be held chargeable with notice of their acts.   It is, in any aspect of the case, an admission that the company had for more than one year, prior to that election, suspended the ordinary and lawful business of the company, and that the Ogdensburg and Lake Champlain Railroad Company had been, during that time, holding adversely to them.

There are several charges of fraud alleged against the second mortgagees, which, if true, are immaterial and irrelevant in this action.

Assuming that there might have been grounds of relief against the judgment and proceedings in the foreclosure suit, which would have warranted a judgment restoring the property to the company, they were not available in this action. The parties to be affected thereby are not defendants in this action, and consequently no judgment can be made therein impairing their rights.   These considerations show that there was no issue of fact to be tried either by the court or by a jury, and judgment could therefore be properly rendered on the complaint and answer. .

The judgment rendered thereon, declaring a forfeiture by the company of its rights and franchises, and its dissolution, · was proper, and as the defendants, other than the company, have admitted the exercise of such rights, after a knowledge of the facts above referred to, the fines imposed on them were legally adjudged, and the views presented in the opinion

delivered at General Term, in which I concur, show that a receiver was properly appointed.

I may add, that the refusal to stay proceedings in this action was discretionary, and is not reviewable in this court.

It follows that the judgment appealed from must be affirmed with costs.

Foster, J. (dissenting.) The order of the Special Term, denying the motion to stay the proceedings in this action until the determination of the one previously commenced by the defendants against the persons for whose benefit, and for whom, this suit was brought, was one resting largely in the discretion of the court. It did not " involve the merits and necessarily affect the judgment," and whether we think that discretion was well exercised or not, we should not interfere. Such orders are not appealable, and the appeal from it should be dismissed.

The main question in the case, arises out of the direct proceedings therein, and judgment which was rendered.

There are but two kinds of issues in civil actions. Issues of law, which can only be raised by demurrer (Code, § 249), and issues of fact, where a fact or facts are maintained by the one party, and controverted by the other. And unless there is a demurrer to the answer, or it be of such character as to call for a reply, an issue of fact is joined. When a material fact, or facts, alleged in the complaint, is controverted by the answer (Code, § 250), and in such case, where the plaintiff does not by demurrer question its materiality, and makes no motion to strike it out, or to make it more definite and certain, it continues to be an issue of fact, until a trial takes place thereon pursuant to law. And, except upon such demurrer, or motion to strike out the answer, the court has no power to determine the issue or to pass upon the materiality of it, until it is regularly called for trial as an issue of fact. If the plaintiff's attorney thinks an answer interposed " does not, upon its face, constitute a counter-claim or defence," it is his duty to demur, and thus present the question of law

arising upon the allegations of the pleadings, in the only manner prescribed by law; and he has no right to call upon the court by a non-enumerated motion to pass upon such question, and there is no authority given by the Code, or by the practice of the court, for a decision of the question in that manner.

It is doubtless true, that where an issue of fact has been regularly brought on for trial, in a case where a trial by jury is not a constitutional right, the court can determine the action upon the pleadings; but that does not furnish any good reason or authority for doing so, on motion merely, any more than it does for deciding it *ex parte*.

It is claimed, that the motion for judgment made in this case was in accordance with the practice in the Court of Chancery. This is evidently a mistake; no such proceeding was authorized or had in that court, in cases even where a jury trial was not necessary. The practice in chancery was very plain and well settled; that after an answer, and after the regular time for demurring or replying had passed, without the service of such a pleading, either party was at liberty to notice the cause *for a hearing on the bill and answer*, but not as a non-enumerated motion. It was a notice of hearing equivalent to a notice of trial; and the practice and rules required that a notice of issue should be served on the clerk; that the cause should be placed upon the calendar; and the rule prescribed that cases for hearing on bill and answer, should be placed in the third class of preference thereon. (1 Barbour's Ch. Pr., 312, 313; Chancery Court Rules, ed. 1857, Rules 65, 88, 89, 91.) In any aspect of the case, the notice and hearing were clearly irregular and contrary to the practice prescribed by the Code, as well as to the former practice in chancery. Still, unless there was an issue which should have been tried by a jury, it is but an irregularity, and it will not avail the defendants on an appeal from the judgment.

The issue was clearly an issue of fact, and not of law; and if it arose in an action or proceeding in which the constitution secured to the defendants the trial of an issue of fact by jury,

HAND—VOL. III.　　30

the plaintiff not having moved to strike out for any of the reasons provided for in the Code, and not having demurred, there was no power or authority vested in the court, either to try the issue or determine its materiality (which is substantially the same thing), until a jury had been impanneled for the trial of it. The judge could no more order a judgment for the plaintiff upon the ground that he did not deem that the answer controverted the allegations of the complaint, or that it confessed them, than he could do so after the trial had commenced before the jury; and surely he could not do that. In cases where a jury trial is necessary, and *after the jury is impanneled*, the judge can doubtless order a nonsuit, where the proof of the plaintiff is not sufficient to support the action, or he may dismiss the complaint, where it does not state facts sufficient to constitute a cause of action pursuant to the Code. Or he may rule that the defence interposed is not sufficient, or that, upon the undisputed testimony the plaintiff is entitled to recover, and in such case he may direct the jury to find a verdict for the plaintiff; for such was his undoubted authority at common law, but he cannot *order a judgment against the defendant in any other way*. The jury must pass upon the question *pro forma* at least, and a judgment ordered directly by the court in such case, would be clearly erroneous, and from it an appeal would lie. And the appellate court would, for that reason, reverse it without looking to see whether, if constitutionally tried, the result could have been different. Any other course than this would allow the constitutional right of trial by jury to be subverted at the whim, caprice, or by the mistake of the judge.

Was this action, then, brought for an alleged wrong, for which, by the common law, or by the statute, previous to the adoption of our State constitutions of 1846, or of 1821, *quo warranto* was the appropriate and only remedy; and in proceedings in the nature of a *quo warranto*, were the parties entitled to have all issues of fact tried by a jury? That issues of fact, in proceedings by *quo warranto*, were triable only by a jury (except by consent of the parties), is too plain a propo-

sition to require the citation of authority to support it, and it is not controverted before us. Nor can it be claimed that, independent of some statute, such a proceeding has ever been entertained in a court of equity. It is a common law proceeding; and it has been engrafted into the statutes as such.

That it was a proceeding as upon a writ of *quo warranto*, though in *the form* of an action, under the Code, is perfectly apparent, and was for causes which were among those for which, the Attorney-General, in pursuance of article second, of title 2, of chapter 9, of part 3d of the Revised Statutes, was authorized to institute the proceeding. It authorized him to file the information with or without leave, whenever " any person should usurp or intrude into any office in any corporation created by the authority of this State " (section 28). And on leave, " whenever any corporation shall offend against any of the provisions of the act or acts, creating, altering or renewing such corporation;" or " violate the provisions of any law by which such corporation shall have forfeited its charter by misuser;" or " whenever it shall have forfeited its privileges and franchises by non-user;" or " whenever *it shall have done, or omitted, any acts which amount to a surrender of its corporate rights, privileges and franchises;*" or " whenever it shall exercise any franchise or privilege not conferred upon it by law" (section 39). And the same section made it his duty to file it in all cases of public interest; and in any other case where satisfactory security should be given to indemnify the State.

The 48th section provided that, when the defendant should be found or adjudged *guilty* of usurping or intruding into, or unlawfully holding or exercising such office or franchise, judgment should be rendered ousting and excluding him; and that the Attorney-General recover his costs; and that the court in its discretion might fine the defendant in a sum not exceeding $2,000 to be paid to the State; and the 51st section declared that " whenever any such judgment shall be rendered, the *Court of Chancery* shall have the same powers to restrain the corporation; to appoint a receiver of its

property and effects, to take an account, and make distribution among the creditors, as are given in the third article of the 4th title of the 8th chapter of part 3d of the Revised Statutes." And a reference to those provisions will show, that such proceeding has to be taken upon an application founded on a petition, and was necessarily (as it was to be addressed to another court) a subsequent and separate proceeding from that in which the judgment of surrender, or usurpation, was rendered.

Now, chapter 2, of title 12 of the Code, under which this action was brought, contains, among others, every provision of the Revised Statutes, which are hereinbefore set forth, and in almost the identical words used there, except that the application, which by the 51st section, referred to, was to be made to the Court of Chancery, is to be made to the same court, which renders the judgment. So also chapter 2, of title 12 of the Code *professes* to be a substitution of the action in the place of *quo warranto*, and is entitled, "Actions in place of *scire facias, quo warranto*, and of informations in the nature of *quo warranto*." And the first section of that chapter (§ 428 of the Code) declares that, "the writ of *scire facias*, the writ of *quo warranto*, and proceedings by information in the nature of *quo warranto*, are abolished; and the remedies heretofore obtainable in these forms may be obtained by civil actions under the provisions of this chapter."*

. The complaint is drawn pursuant to the provisions of the aforesaid section of the Revised Statutes, in regard to *quo warranto*, and of the second chapter of title 12 of the Code; and the demand for judgment is identical with the provisions of each of those statutes, including a demand that a fine of $2,000 be imposed upon each of the defendants; and *it does not demand that a receiver be appointed.* The judgment, also, is predicated upon the ground that the action is in the

---

* "A *quo warranto*, for which this action is a substitute, is in the nature of a writ of right." * * * "The action under the Code, although differing in some of the formula of procedure, from proceeding by information, or by writ of *quo warranto*, is nevertheless in substance the same, and is governed by all the rules which regulated the proceedings under the former practice." (*The People* v. *Pease*, 30 Barb., 590, 591, per Allen, J.)

nature of *quo warranto,* and it pronounces, in all things, as authorized in such proceedings, though it goes further, and renders judgment restraining the defendants, and appointing a receiver.   And Justice JAMES, in his statement of the case, in the opinion delivered by him at the Special Term, says: "This is an action by the people, brought by the Attorney-General of the State, in the nature of a *quo warranto,* to dissolve the corporation."

No attempt has been made to show, that in such a proceeding, an issue of fact has ever before been tried by the court, where a jury has been demanded; and I think no case can be found of such trial, except where there was actual consent, or at least, no seasonable objection made thereto.

It is said, on the part of the plaintiff, that while the Code has provided that such proceedings are to be had by an action, it has provided for the trial of issues of fact to be joined therein by sections 253, 254 and 255, and that thereby, all such issues of fact as this, may be tried by the court alone at Special Term.   On the other hand, it is claimed, that the defendants had the constitutional right to a trial by jury; and also, that the legislature in 1849, when it passed chapter 2, of title 12 of the Code, inadvertently omitted to make any change in section 253, but that they did not *intend* to take away *in such cases,* the right to a jury trial.   It is doubtless a proper rule of construction, that the legislature is not to be held as intending to disturb a constitutional right, unless it clearly appears, and we should presume that the omission to provide *specially* for the trial of such cases, was unintentional; but it is not very important how that was.   For the legislature can no more take away such a right by intentional legislation, than by inadvertence.   And however the legislature may have intended, the provision of the Constitution of 1846 (Edmond's edition of the Revised Statutes, vol. 1, page 37, article 1, section 2), is too clear and explicit, to allow the rights of the suitor under it to be affected by any legislative enactment whatever.   Its declaration is, that "*the trial by*

*jury, in all cases in which it has been heretofore used, shall
remain inviolate forever."* This constitutional right to trial
by jury is ably discussed in *Wymhamer* v. *The People* (3
Kernan, 426, 427), by JOHNSON, J.; and at pages 456, 457,
by HUBBARD, J. And the resolutions of the court, at page
487, holding that the party, there, was entitled to a trial by
a jury of twelve men, all proceed upon the principle that such
constitutional right is to be carefully guarded and maintained,
and that it is to be held to apply to all cases, where questions
of the *like nature* had been so tried. " But a jury trial may
be waived by the parties in all civil cases, in the manner to be
prescribed by law." It must be *waived* or it remains, and it
doubtless may be waived by stipulation; by consent expressed
in open court; by going to trial before the court alone,
without objection, or by not appearing, and suffering default.
But a standing up in court, at the outset, and demanding a
trial by jury, can never be construed as a waiver. Nor is
the court authorized to assume, if there is an issue of fact
joined, that it is so immaterial that he can dispense with the
jury and try it alone.

It is also claimed that this action was commenced under
section 38: " Of proceedings against corporations in equity."
(2 R. S., 463.) And that being an equity action, the mode
of trial adopted was correct. It is due to the case, to say,
that that section relates only to three specific things, and
applies against corporations *alone*, and not to individuals;
and that the only judgment which can be rendered for the
causes expressed therein, is that the corporation be dissolved. It
does not authorize the imposition of fines, nor does it war-
rant any proceeding against the individual defendants. The
complaint in this case charges much more against the cor-
poration than what is provided for in that section; and
includes the other defendants; and as I have said before, *all*
that is contained in section 39 (page 463). Besides a party,
by uniting in one action, causes which, upon an issue of fact,
may be tried by the court alone, with causes as to which the
constitution guarantees a trial by jury, cannot claim that

both are thereby made triable by the court; but the right to trial before the court must give way to the constitutional right, and the issues must be tried by a jury.   The common law right, cannot, under the Constitution, be taken away by an act which gives a court of equity jurisdiction over the action, for *then*, when the issue comes to be tried, it must be by a jury, just as much as though the proceeding were at law. And even in a case arising solely under the thirty-eighth section of the Revised Statutes, before referred to, the issue of fact would have to be tried by a jury unless such trial was waived.   That act originated in 1825, and was afterward incorporated, in substance, into the Revised Statutes; and the language of the Constitution of 1821, in protecting the right of trial by jury was quite as strict and explicit as that of 1846, in declaring that " the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever."   The court, therefore, erred in trying the issue, at Special Term, and without a jury, against the objection of the defendants.

I think the court also erred in rejecting all the denials of the defendants contained in the answer.   It appears that he used all such parts of the answer, as appeared to him to substantiate the allegations of the complaint; as for instance, the admissions that the legislature passed the acts, accepting the surrender of the franchise from the Northern Railroad Company; and the act purporting to transfer the road and its franchises; and the personal property which had belonged to the Northern Railroad Company, to the Ogdensburgh and Lake Champlain Railroad Company; as evidence of such surrender, and transfer to the last named company, notwithstanding the answer contained the allegation that the Northern Railroad Company was not a party to the acts, and that the Northern Railroad Company did not make any such surrender; and that such act of the legislature was procured in fraud of the rights of the Northern Railroad Company, all which appears to have been disregarded.

And that the admissions, that in a proceeding had at Sara

toga county, the said company was declared dissolved, was to be taken as evidence thereof; notwithstanding the answer alleged that such order was fraudulently procured, and that no legal notice of such proceeding was ever served upon the said company; and at the same time the absolute denial of the allegations of the complaint hereinbefore set forth, was disregarded, because it did not deny specifically, each and every allegation of the complaint *separately*. It is true, that the answer was exceedingly prolix, and, doubtless, the whole defence attempted to be set up, could have been embodied in much less space, but the question is, whether the Code requires such specific and separate denial of all the allegations of the complaint. If it does, the answer, generally, will necessarily be at least as lengthy as the complaint. It surely will not be claimed, when the defendant does not set up new matter, by way of explanation, or otherwise, that one general denial of all the allegations of the complaint is not sufficient. And if so, what reason is there for saying, where the defendant admits certain of the allegations, and explains others, or sets up new matter, that a general denial of each allegation, not specifically admitted, should be treated differently than if the whole complaint was so denied.

It may require a little painstaking to ascertain precisely, what the issue in such case is, and it may require the court to occupy a little more time in understanding it; and this may be a good reason for *desiring* the answer in a different form, but does it render such denials of no effect? I think not. If it is not specific, and certain enough, to satisfy the plaintiff's attorney, he can move to have it made more definite and certain, and that, I think, is his only remedy.

The two reported cases cited by the defendant's counsel (*Parshall* v. *Teller*, 13 Howard, 7, and *Smith* v. *Wells*, 20 Howard, 158), although they are decisions at Special Term, are, I think, true exponents of the meaning of the Code in reference to such denials; and in the latter case, where some portions of the complaint were admitted, and separate and further defences to the specific allegations of the complaint

were set forth at very considerable length, and where also there was an allegation, stating: "And these defendants say that as to each and every other allegation in the complaint contained, not hereinbefore admitted, they say that they deny the same;" and being to a considerable extent like the case at bar, the court, on motion to strike out the general denial, refused to do so, but ordered it to be made more definite and certain; and held that an answer or part thereof could not be stricken out on the ground of inconsistency. (*Troy and Rutland Railroad Company* v. *Kerr*, 17 Barb., 599, per Hand, J.) The same rule was held as to striking out, in *Ostrom* v. *Bixby* (9 Howard Pr. Rep., 59) and *Willard* v. *Clow* (9 Howard Pr. Rep., 290).

The court, at Special Term, supposed that the denial, which was considered as unauthorized by the Code, was a denial of each and every allegation of the complaint not specifically admitted or denied; but it will be seen from the copy of it hereinbefore · inserted that it was a denial of any allegation and averment in the complaint not specifically admitted, only.

The numerous citations in the appellant's points, of cases which were before this court on appeal at the September term, 1869, in which substantially the same kind of denial appeared, and the experience which all the members of this court have of the cases which come before them on appeal, manifest that such a denial as that which was in this case held to be incompetent and not authorized by the Code, is quite as common as in any other form. And I think the court erred in not regarding it as a sufficient denial and in rendering judgment as though it had not been made by the defendants; for certainly, if it was allowed to stand as a denial, the plaintiff, upon the pleadings, was not entitled to any such judgment as was rendered upon the merits.

Though several other questions are raised on the appeal, I consider it material further to inquire only whether the court below had the right in the judgment rendered on the merits to include the judgment or decree that the corporation be restrained, or that an individual named therein be appointed

receiver of its property, &c. Judgment restraining the Northern Railroad Company was prayed for in the complaint, but that a receiver be appointed was not, unless it is included in a general prayer for relief. But in the view which I take of the question, it is immaterial whether either or both were specifically prayed for or not, for most clearly the court could not render judgment for either of them. I have adverted to the fact that the provision for judgment is the same under the Code as under the 39th section of the Revised Statutes in regard to the proceedings on *quo warranto*, except that in the Revised Statutes, the proceedings for restraint and for a receiver must be made to the Court of Chancery; showing clearly that it must be made after judgment on the merits is rendered, and that the application which the Attorney-General is to make must be by petition. A careful reading of section 444 of the Code will leave no doubt that the appointment by the court of a receiver and the order for restraining the corporation cannot be made until after judgment (*People* v. *Manhattan Ice Company* (18 Abbott, 382), and that it must be on an application founded on a petition, and all such other papers as are prescribed by the Revised Statutes. For the 444th section of the Code provides that " when such judgment shall be rendered against a corporation the court shall have the same power to restrain the corporation, to appoint a receiver of its property, *and to take an account, and make distribution thereof among its creditors as are given in article 3, title 4, chapter 8, of the third part, of the Revised Statutes.*" If the section ended here, could there be a well founded doubt that such proceedings were to be taken in conformity to the provisions of said article 3, or that though made to the Supreme Court, it should be by petition? I think not. But then follows: "And *it shall* be the duty of the Attorney-General *immediately after* the rendition of such judgment, to institute proceedings for that purpose". Why peremptorily require the Attorney-General immediately *after* the rendition of such judgment to institute such proceedings, if the court could without them appoint such

receiver and adjudge such restraint. The whole language of the sections of article 3 and of section 444 of the Code makes it plain that the only change intended and which became necessary, because the Court of Chancery was abolished, was merely to substitute the Supreme Court to entertain such subsequent proceedings, and that in all other respects they were intended to be identical. And it will be found from an examination of the "third article" that such subsequent proceedings are not *ex parte.* I think there was manifest error in these portions of the judgment, and that for all the errors which are above suggested the judgment of the General Term and that of the Special Term should be reversed and a new trial ordered with costs, together with the costs of this appeal, to abide the event.

Ingalls and Sutherland, JJ., concurred with Foster, J., for reversal.

Earl, Ch. J., and Hunt, Smith and Grover, JJ., concurred with Lott for affirmance.

Judgment affirmed.