In the Matter of the Estate of ALBERT O'CONNOR, Sometimes Known as TOM SMITH, Deceased.

Surrogate's Court, Kings County, May 23, 1936.

*Arnold M. Goldstein* [*Jess Skolkin* of counsel], for Alfred O'Connor, as administrator, petitioner.

*Guggenheimer & Untermyer* [*Abraham Shamos* of counsel], for the claimant Alfred O'Connor, individually and as one of the next of kin.

*Mitchell & Beattie,* for Albert O'Connor, one of the next of kin, objectant.

*Francis J. Carlucci,* for James O'Connor and Percy O'Connor, two of the next of kin, objectants.

WINGATE, S. The question presently propounded is as to whether a referee appointed by the surrogate " to hear and determine all questions arising upon the settlement of said account, which the surrogate has power to determine, and to make a report thereon to this court," is under obligation to make or pass upon specific findings of fact and conclusions of law. The respondent maintains the affirmative of this position and seeks a remission of the report of the referee, Edward J. Connolly, Esq., heretofore submitted herein, for this purpose.

The effect of a decision by a referee so appointed underlies the entire issue. This is inherent in the enactment authorizing the submission to him, which is contained in section 66 of the Surrogate's Court Act, and, so far as presently pertinent, provides as follows: " In a special proceeding other than one instituted for probate of a will, and subject to the right of trial by jury of any question of fact, the surrogate may, in his discretion, appoint a referee to take and report to the surrogate the evidence upon the facts, or upon a specific question of fact; to examine an account rendered; to hear and determine all questions, arising upon the settlement of such an account, which the surrogate has power to determine; and *to make a report thereon, subject, however, to confirmation or modification by the surrogate."* (Italics not in original.)

The nature of the office performed by the referee is apparent from the foregoing italicized words. He is merely a lineal descendant of the master in chancery under the practice of the early nineteenth century, who was said to be the " right arm of the court." " He is its intrument for collecting evidence and reporting conclusions for the use of the court. His main duty is to report facts derived from the evidence submitted to him, and if he draws legal conclusions from the facts, he performs a function more germane to the duties of the judge." (*Austin* v. *Ahearne*, 61 N. Y. 6, 12.)

His report, *propriore vigore*, possesses no authority, and is merely advisory of the court, which is at complete liberty to modify or wholly disregard it. Unless expressly or tacitly confirmed by the court, all action by the referee is wholly nugatory, wherefore it is the act of the court itself, which may or may not be based upon the report of the referee, which alone produces any decisive result. (*Swarthout* v. *Curtis*, 4 N. Y. 415, 417; *Weyand* v. *Park Terrace Co.*, 135 App. Div. 821, 823; revd. on other grounds, 202 N. Y. 231; *Matter of Shedden*, 183 App. Div. 837, 839.)

It follows, as a logical matter, that so long as the form of the advisory report is satisfactory to the court itself, no one else has just cause for complaint, at least so long as it is in substantial conformity with the general practice of the court. It is the ultimate result of the litigation only with which the litigant has any proper concern, and if this displeases him, ample opportunity for appellate review of such result is afforded by the provisions of applicable statutes.

*Matter of United States* v. *Leary* (138 App. Div. 857), upon which the respondent partially relies for authority, was decided in the bad old days (1910) during which the Surrogate's Court was still to a degree the stepchild of the judicial system of the State. It was based on the then existing wording of section 2546 of the

Code of Civil Procedure, which provided, *inter alia*, that the cumbersome practice still in vogue in the Supreme Court of making and filing separate findings of fact and conclusions of law was obligatory upon this court.

Four years later, on the revision of the Code, this burdensome requirement was eliminated, the note of the committee on revision reading: " By the change we do away with the useless findings and the resulting miscarriage of justice often brought about by error in the findings or refusals to find. If each case goes upon a general verdict, the Appellate Division can do justice."

The decision being based upon a statute which differs radically from that now in force, is obviously no longer a pertinent precedent.

Subsequent to the noted alteration in the statute, the Appellate Division of this department held in *Matter of Carpenter* (178 App. Div. 165, 167): " under section 2541 of the Code of Civil Procedure, the decision of the surrogate or his referee need not contain separate findings of fact."

The section thus noted was carried into the Surrogate's Court Act as section 71 and has continued in force until this day without change.

The court has not overlooked the contrary determination of a former surrogate in *Matter of Troughton* (101 Misc. 386), rendered five months after that in *Matter of Carpenter*. Obviously the *Carpenter* decision cannot have been called to his attention, since its authority was as obligatory upon him as upon this court. His determination, therefore, never represented the law.

No doubt were this court to request its referees to submit reports prepared in this form, which is wholly obsolete so far as surrogate's matters are concerned, they would comply. It has, however, no intention of so doing as it has a natural antipathy to atavistic tendencies seeking a renascence of obsolete procedure.

The motion to remit the proceeding to the referee is accordingly denied, with costs.

Enter order on notice in conformity herewith.