In the Matter of the Estate of HENRY GRUBE, Deceased.

Surrogate's Court, Kings County, October 3, 1938.

*Topken & Farley* [*Philip F. Farley* of counsel], for Theodor Grube, petitioner.

*Walter Jeffreys Carlin*, for the Lafayette National Bank of Brooklyn in New York, substituted trustee.

*Townsend, Kindleberger & Campbell* [*E. Crosby Kindleberger, Maxwell Rubin* and *Emanuel Kintsch* of counsel], for James F. Egan, public administrator of New York county, respondent.

*Emanuel Kintsch*, for Maxwell Rubin, respondent.

WINGATE, S. This proceeding is instituted by a person asserting a status as remainderman of a trust erected by the " sixth " item of the will of Henry Grube, which trust has now fallen in by reason of the death of the life beneficiary, for a partial payment to him of his alleged remainder interest. Three answers have been interposed to the petition and the matter has been submitted to the court for its decision on the petition, these three answers, and acknowledged consents by certain parties to the grant of the relief prayed.

As this and other courts have frequently had occasion to observe, this method of submission amounts in effect to a motion for judgment on the pleadings, because of their supposed legal insufficiency, in a manner identical with that which prevailed under former practice where a demurrer was interposed by an adverse party. (*Matter of Kirkman*, 143 Misc. 342, 343; *Matter of Larney*, 148 id. 871, 872; *Matter of Hearn*, 158 id. 370, 372; *Matter of McGlone*, 166 id. 636, 637; *Matter of Hazley*, Id. 745, 746.)

Upon such a motion the allegations of the pleading attacked are to be accepted as true (*Greeff* v. *Equitable Life Assurance Soc.*, 160 N. Y. 19, 29; *Matter of May*, 160 Misc. 497; Id. 640, 641; affd., 255 App. Div. 31), and the pleader is further entitled to the benefit of that which may be implied by reasonable and fair intendment from the allegations made (*Marie* v. *Garrison*, 83 N. Y. 14, 23; *Matter of Hearn*, 158 Misc. 370, 372; *Matter of Duggan*, 146 id.

596, 597) when viewed in the light most favorable to him (*Matter of Froehlich*, 162 Misc. 768, 769; *Matter of McGlone*, 166 id. 636, 638), although his conclusions, construction of the subject-matter and inferences are, of course, not conceded. (*Greeff* v. *Equitable Life Assurance Soc.*, 160 N. Y. 19, 29; *Matter of Kirkman*, 143 Misc. 342, 343.)

In perhaps a majority of instances, such virtual demurrer is directed solely against the last pleading interposed. This, however, is apparently not necessarily the case since it has been held that objections to the validity of a complaint or petition may be taken by answer as well as by express motion to dismiss by reason of supposed legal insufficiency where the defect upon which reliance is based does not appear on the face of the pleading itself. (*Zurlick* v. *Stankus*, 125 Misc. 457, 459.) If such be proper practice it would follow that in so far as a particular defense or portion of an answer was addressed to the merits of the petition, the submission on the petition and answer would amount to a demurrer or motion for judgment by the petitioner on the record as a whole, but where the answer or a specified portion thereof was dilatory only, and predicated upon a supposed defect of the petition itself, not going to the merits, the motion should be deemed one of dismissal on the part of the particular answering respondent.

In the vast majority of instances this distinction, if one actually exists, is somewhat illusory in spite of the considerations respecting inferences which have hereinbefore been noted.

As a preliminary to the evaluation of the petition and answers which have been submitted for the judgment of the court as to their respective merits, in the present proceeding, a brief review of the admitted factual background of the case will be of assistance

Henry Grube died on August 18, 1916, leaving a will which was probated in this court on the tenth of the following October. By its " sixth " item he devised to his executors and trustees certain described premises with directions to collect the rentals therefrom and " after paying all proper charges on said property, to pay over to my niece, Lulu May Clark, the sum of Nine Thousand ($9,000) dollars annually, in equal monthly payments and to pay the remainder of said net rents to my two brothers, Herman Grube of Bochun, Germany and Andrew Grube of Rhinebeck, New York, in equal parts, in equal monthly payments." The item then further continued: " I direct that said payments to my niece, Lulu May Clark, shall continue as long as she lives. In case of her death, I direct my executors and trustees to sell the said property * * *, and after the payment of all proper charges, to divide the net proceeds equally between my two brothers above named or their heirs."

Andrew, the second brother named in the will, predeceased the testator, leaving two children, Henry C. Grube and Edith Grube Herrington. It is admitted by all concerned that they succeeded by representation, to the interest of their father pursuant to the provisions of section 29 of the Decedent Estate Law. They are both living and are parties to this proceeding.

Herman, the other brother of the decedent, survived the testator but predeceased the life beneficiary, dying intestate on May 25, 1935. His estate is represented in this proceeding by Mr. Egan, the public administrator of New York county. He was survived by four children, Theodor, who is the present petitioner, Will, Harry and Herman, Jr. All of these are living except the last named, who survived the life tenant and died on November 10, 1937. His estate is represented by William J. Topken, who was appointed ancillary administrator by the surrogate of New York county. All of the surviving sons of Herman and the ancillary administrator of Herman, Jr., are parties to this proceeding.

The life beneficiary, Lulu May Clark, died on July 11, 1937, and letters testamentary have been issued to Lulu May Clark, 2d, as executrix.

Subsequent to the death of the principal testator, the accounts of the fiduciaries were judicially settled by this court in September, 1922, October, 1924, June, 1925, January, 1927, and March, 1931, but by decree dated November 6, 1936, all of the decrees were vacated by reason of the demonstrated fraud of the surviving fiduciary (*Matter of Grube*, 160 Misc. 718), who was removed from office. Lafayette National Bank was appointed successor trustee in his stead and is a party to this proceeding.

In 1925, Herman, testator's brother, purported to assign to certain attorneys to the total extent of $8,000 without interest certain portions of the income to be derived by him from the trust erected by the " sixth " item of the will, and his remainder interest. The rights under this assignment are now vested in Maxwell Rubin, Esq., who is a party to this proceeding.

The petition, which, as noted, is made by Theodor, a son of the testator's brother Herman, who survived the testator but predeceased the life beneficiary, seeks a payment of $2,500 on account of his alleged vested one-eighth remainder interest in the trust principal. Three and only three answers have been interposed, the first by the successor trustee, the second by Mr. Rubin on behalf of his own asserted interest as assignee, and the third by Mr. Egan as administrator of the estate of petitioner's father, the testator's deceased brother, Herman. Each contains certain denials of the allegations of the petition, but as a preponderance

of the matters covered thereby are more completely embraced in the affirmative answers interposed by each of the answering parties, the latter require initial evaluation.

The allegations of the petition, after identification of the petitioner and the assertion of his alleged interest as a remainderman, recite the death of the testator, the probate of his will, the appointment of the successor trustee, the provisions of item " sixth " of the will, the predecease of Andrew, the survival of Henry C. Grube and Edith Herrington, his children, the death of Herman, Sr., and the appointment of Mr. Egan as his administrator, the death of the life beneficiary, Lulu May Clark, the survival of the children of Herman, Sr., the death of Herman, Jr., and the appointment of Mr. Topken as his administrator. It is then asserted that the successor trustee has upwards of $120,000 in its hands and is able to make the requested payment without injuriously affecting those possessing p ior or equal rights, asserts that a similar payment of $10,000 was made to Edith Herrington on account of her remainder interest, alleges that no person other than those theretofore named is interested except Maxwell Rubin who holds an assignment from Herman, Sr., of his interest to the extent of $8,000 of which $4,859.75 remains unpaid and concludes with the assertions that the petitioner possesses a one-eighth remainder interest in the corpus of the trust and that petitioner's brothers and the administrator of his deceased brother have consented to the granting of the present application. Not only are such consents duly filed, but a similar, duly acknowledged consent by Edith Grube Herrington has been submitted.

The underlying motive actuating the presentation of the petition is obvious to any person who, like the court, has, figuratively speaking, lived with this case for upwards of twenty years. It is to obtain an adjudication as to whether the gift made to testator's brother Herman, under the " sixth " item of the will, became absolutely vested in him as of the date of death of the testator, or whether it was merely contingently vested and subject to divestment by his predecease of the life beneficiary, Lulu May Clark, which has actually occurred. On the former alternative, such remainder interest would devolve to Herman's estate, represented by Mr. Egan, subject to such rights as Mr. Rubin may be found to possess by virtue of his assignment. On the latter, upon the death of the life beneficiary, it may have become the vested property of the children of Herman, of whom the petitioner is one. In view of the fact that the trust terminated on July 11, 1937, by reason of the death of the life beneficiary, in consequence of which the remaindermen, whoever they may be determined to

be, have, for well over a year, been entitled to receive their interests in possessory enjoyment, it would appear to be for the advantage of all concerned that the issue be determined as speedily as possible.

Another inference intrudes itself on the facts of the record by reason of the fact that the children of Herman are presumably the sole distributees of his estate and, therefore, are the persons to whom its net avails would devolve if it were to be determined that Herman's remainder interest had vested absolutely on the death of the testator. Thus, the only persons who are parties to this record and possess any interest in extending the already protracted litigation in this estate are the public administrator of New York county to the extent of some $2,400 of commissions which may accrue to him in return for acting as a conduit of the remainder distribution to the same individuals who assert a right thereto direct from the original estate, and Mr. Rubin, the worth of those assigned interest, presently valued at less than $5,000, would presumably be impaired, if it were to be determined that Herman's interest was not absolutely vested.

The separate answers of the successor trustee do not oppose a determination on the merits of the essential issue underlying the application. On the contrary, that numbered " third " points out that a construction of the " sixth " item of the will is essential for a determination of the conflicting rights of the several parties to the proceeding and prays that such construction be had, calling the attention of the court in the " second " answer to the value and nature of the assets in its hands and to the fact that principal payments in addition to those sought by the petitioner could not be accorded to other like potential remaindermen without a sale of such assets at a loss.

The answer of the public administrator, representing the estate of Herman, Sr., is addressed solely to the merits of the petitioner's position. It primarily traverses the propriety of the construction of the will for which he contends and secondarily interposes a defense which possesses a dual aspect in that it asserts that a practical construction of the will, participated in by the petitioner has been had, which precludes his assertion of his present claim, and that he is estopped by his conduct from its assertion. As this is the most serious of the defenses interposed and is advanced in identical language in the " fifth separate answer " of Mr. Rubin, it is appropriate for consideration in connection with the answer of the latter.

In addition to the denials by Mr. Rubin of the legal conclusions of the petitioner respecting his remainder rights upon a construc-

tion of item "sixth" he interposes seven separate affirmative answers, one of which, numbered "fifth," is, as noted, phrased identically with that of the public administrator which asserts a practical construction and estoppel against the petitioner. The remaining "separate" answers are preponderantly dilatory in nature, amounting in substance to special demurrers addressed to supposed defects of procedure on the part of the petitioner. They seek to prevent the present determination of the question of whether or not, under the terms of the "sixth" item of the will, the petitioner, as he asserts, possesses the status of the owner of a vested one-eighth interest in the remainder of the trust created thereby. The legal effectiveness of these dilatory answers will be considered in an approximation of inverse order of the court's opinion of their importance.

The "Third Separate Answer" recites the pendency of the proceeding for the settlement of the reopened accounts of the removed fiduciary, the submission thereof to a referee for report and the adjournment *sine die* of such proceedings before the referee. It then asserts that among the issues therein involved is the "validity" of the assignment which Mr. Rubin now holds and that a request was incorporated in the pleadings of the removed trustee that " he be given directions as to the proper payment and distribution of the decedent's estate." It alleges that the determination of these questions in that proceeding would involve a construction of the will and that for this reason it would be improper for the court to decide this incidental question in the present proceeding. Although not expressly so designated, this amounts in effect to a motion to dismiss the present proceeding under subdivision 4 of rule 107 of the Rules of Civil Practice on the ground " that there is another action pending between the same parties for the same cause."

The principle invoked is defined as follows in *Curlette* v. *Olds* (110 App. Div. 596, 598), in which a stay was sought in an action in a State court because of the pendency of a prior action in a Federal court: " It is true that the policy of the law is that the first tribunal obtaining jurisdiction of the parties and the subject of the action shall decide the controversy, so that a multiplicity of suits may be avoided, and that there shall be no unseemly race between parties after action brought to get a speedier trial in some court in which they feel a trial is more convenient or otherwise more desirable. Here a stay cannot be claimed as a matter of right, but rests in the sound discretion of the court, and there are many circumstances which appeal to the discretion of the court and naturally lead to a denial of the defendant's motion."

Not only, as indicated, is the principle primarily applicable to situations in which suits are pending in different tribunals, but "it is only where the decision in one action will determine all the questions in the other action, and the judgment on one trial will dispose of the controversy in both actions that a case for a stay is presented." (*Rosenberg* v. *Slotchin*, 181 App. Div. 137, 138.) It follows, therefore, that even where proceedings are pending in different tribunals, a stay would be improper if "the parties to the two actions were not the same" or it does not "appear that the entire relief demanded and sought for in" the later "action could be awarded in the other." (*People* v. *Northern Railroad Co.*, 53 Barb. 98, 121; affd., 42 N. Y. 217.)

The final illuminating thought in this connection is contributed by the Appellate Division for this Department, which observes in *De La Vergne Machine Co.* v. *New York & Brooklyn Brewing Co.* (125 App. Div. 649, 651): "The rule in respect to postponing a cause until after the trial of another is one of convenience and order in practice * * * and not always one of strict right."

In the opinion of the court, Mr. Rubin's "Third Separate Answer" fails in law to state an adequate legal objection to the consideration on the merits of the present petition. The accounting proceeding to which reference is made is not pending in another court but in this; the proceedings in respect thereof have been postponed indefinitely and the time of its determination is wholly problematical; it has not been alleged that the children of Herman, Sr., other than the petitioner, or that the representative of the estate of Herman, Jr., are parties thereto; and it does not "appear that the entire relief demanded and sought for " in this proceeding "could be awarded in the other." Finally, and perhaps most important, the referee before whom the other proceeding was pending until it assumed its present comotose, not to say moribund, state, is but a fact finding agency of this court whose decision or determination would, *pro priori vigore*, possess no authority whatsoever, and, to attain the dignity of adjudication, must be confirmed by this court itself. (*Swarthout* v. *Curtis*, 4 N. Y. 415, 417; *Austin* v. *Ahearne*, 61 id. 6, 12; *Weyand* v. *Park Terrace Co.*, 135 App. Div. 821, 823; revd., on other grounds, 202 N. Y. 231; *Matter of Shedden*, 183 App. Div. 837, 839; *Matter of O'Connor*, 159 Misc. 522, 523.)

Since the decision of this question must, therefore, be made by this court itself in any event, since the question of construction is merely incidental to both proceedings, and, finally, since the interests of all interested parties, with the exception of Mr. Rubin, who appears to be desirous of interposing every real or imaginable

ground for its postponement, dictate the propriety of as early a determination as is conveniently possible, the court, in its discretion, and pursuant to the express authority accorded to it by subdivision 2 of section 20 of the Surrogate's Court Act, determines that the objection of Mr. Rubin's " Third Separate Answer " is insufficient.

His " Fourth Separate Answer " is capable of extremely ready disposal. He asserts therein the pendency of an action in the Supreme Court, New York county, of an action entitled " Herrington v. Laimbeer." He makes the conclusory allegation that " the interests of the petitioner herein are represented by the plaintiffs therein, including this respondent, under section 195 of the Civil Practice Act." Without going into the questions of the possibility of a representative action in this connection or of the feasibility of a demonstration that Mr. Rubin, the diversity of whose interest from that of the petitioner is amply apparent from the present record, could conceivably represent his interests in so delicate a matter as the determination of whether, under the terms of this will, the petitioner and those in like position are entitled to take the entire remainder to the exclusion of Mr. Rubin, it is sufficient to state that this pleading contains an insufficient statement of facts to demonstrate that another action is pending, the result of which would be binding upon the petitioner who is not asserted to be a party thereto or that it is sufficiently similar to the present so that its judgment, even if binding, would be determinative of the present controversy. Mr. Rubin's " Fourth Separate Answer " is, therefore, determined to be insufficient as a matter of law. (*Dolbeer* v. *Stout*, 139 N. Y. 486, 489.)

Mr. Rubin's " sixth " and " eighth " separate answers may conveniently be treated together since they are predicated upon the same misconception of the law applicable to the present situation. The " sixth " finds fault with the petition by reason of its failure of allegation demonstrating the present need of the petitioner for the desired partial payment and the " eighth " asserts that no partial distribution may be directed in the absence of the executrix of Lulu May Clark as a party to the record, " under the authority of *Matter of O' Dowd* (248 App. Div. 472, 473) and *Matter of Booth* (119 Misc. 880, 881)."

The two authorities to which reference is made related to *advance* payments, that is, payments before the sums in question were legally due, from funds in the hands of an executor and temporary administrator respectively. They have no application to situations like the present in which, if the position of the petitioner respecting his remainder rights be correct, the payment of his entire one-

eighth interest became a matured obligation over fourteen months ago. If he is the owner of any such rights, then, by reason of such non-payment, he is entitled to interest from the date of death of the life beneficiary. (*Wheeler* v. *Ruthven*, 74 N. Y. 428, 432; *Matter of Rutherford*, 196 id. 311, 315; *Lupton* v. *Lupton*, 2 Johns. Ch. 614, 628; *Matter of Oakes*, 19 App. Div. 192, 193; *Matter of Barker*, 186 id. 317, 322; expressly affirmed as to this point, 230 N. Y. 364, 370, 379; *Matter of Harned*, 140 Misc. 151, 153, 154; affd., 234 App. Div. 796.)

Mr. Rubin has mistakenly assumed that the present application is regulated either by section 217 or by section 221 of the Surrogate's Court Act. Such is not the fact. The pertinent section is section 219 which requires no demonstration of need on the part of the applicant. Mr. Rubin's " sixth " and " eighth " separate answers are therefore, insufficient as a matter of law.

Mr. Rubin's defense numbered " seventh " will next be considered. He therein asserts that the removed trustee converted large portions of income and principal belonging to the estate, in which acts his attorneys were implicated, and that only partial restitution thereof has been made; that these acts are the subject-matter of the litigation in the Supreme Court referred to in his " fourth " answer; that the sums restored and still due are allocatable to both principal and income and that their respective amounts are not ascertainable until an accounting has been had; that the answer of the successor trustee fails to state what portions of the assets in its hands belong to principal and income respectively; and that assuming but not conceding the rights of the petitioner as a vested remainderman, the estate of Lulu May Clark, Mr. Rubin himself and the estate of Herman possess rights to income which are prior to the rights of the petitioner to receive any portion of the principal.

In the opinion of the court, this defense when construed most favorably to the pleader is sufficient to raise an issue of fact which is incapable of summary disposal. Whereas dilatory in a sense, it is not destructive of the propriety of the proceeding as a whole but looks merely to the possibility of according the desired relief to the petitioner at the present time. It follows that it is sufficient to defeat the instant inferred motion of the petitioner for judgment on the pleadings and as the truth of its allegations is deemed to be traversed by reply, a triable issue of fact is raised in respect thereof.

The " second " separate answer of the public administrator which is numbered " fifth " in that of Mr. Rubin will next be selected for evaluation. As hereinbefore noted, these are couched in identical

language, their only differences being in the numbering and arrangement of the several paragraphs.

As paragraphed in the answer of the public administrator, the allegations of this defense are numbered from " 4 " to " 31," inclusive. In Mr. Rubin's answer they are numbered " 17 " to " 44," inclusive. The language and order of paragraphs are identical except that the last three paragraphs of Mr. Eagan's answer, numbered " 29," " 30 " and " 31," are inserted in the main body of that of Mr. Rubin, and are numbered " 35," " 40 " and " 41 " respectively. In the summary of the allegations of the answers to follow, references to the paragraphs of the two answers will be made by indicating that of Mr. Eagan as " E " and that of Mr. Rubin as " R," followed by the particular paragraph numbering. Substantially all of the allegations are made only on " information and belief."

The allegations are in substance as follows: That Henry Grube died on August 18, 1916, leaving as his sole heirs at law his brother, Herman, Jr., his nephew, Henry C. Grube, and his niece, Edith Herrington, who were the children of his predeceased brother, Andrew; that the decedent's wife predeceased him and that Lulu May Clark lived with them prior to her death and kept house for him thereafter. (E 4; R 17.)

The substance of his will is stated and is asserted to demonstrate that the objects of testator's bounty were his nearest blood relatives and his wife's niece, Lulu May Clark. (E 5; R 18.)

That under the will, Herman, Sr., on the death of the testator, received an absolute vested interest in the income of the trust to the extent of the excess over $9,000 annually and an absolutely vested interest in one-half of the corpus. (E 6; R 19.)

That Herman, Sr., received payment of large sums of surplus income during his life and that other large sums on this account were due him at his death. (E 8; R 21.)

That from the death of the testator, all parties construed and understood item " sixth " of the will to confer the aforesaid rights on Herman, Sr., and acted thereon. (E 9; R 22.)

That by reason of such practical construction, the petitioner is estopped to assert that the remainder interest in Herman, Sr., was not absolutely vested. (E 10; R 23.)

That in the transfer tax proceeding initiated by Laimbeer (the removed trustee) filed in September, 1917, no mention was made of heirs of Herman, Sr.; that the decree in that proceeding taxed the remainder at two per cent, whereas if his heirs had been interested, the tax rate would have been five per cent, and the amount of tax not presently determinable and a securing deposit would

have been required; that the taxing order recited that Herman, Sr., Henry C. Grube, Edith Herrington and Lulu May Clark were the only persons possessing any interest under the trust. (E 11; R 24.)

It may be noted, parenthetically, at this point that the records of this court demonstrate that neither the petitioner nor any of the other heirs of Herman, Sr., were parties to this transfer tax proceeding or, so far as alleged in the petition, or demonstrated by the return of the appraiser, had any notice thereof. The determination made by the appraiser was predicated on the representations made to him by the executors of the estate (all of whose accounts have since been opened on the application of Mr. Rubin upon a demonstration of their grossly fraudulent conduct in respect of the affairs of the estate) and the confirmation of the report was made by Surrogate KETCHAM solely by *pro forma* order dated March 6, 1918.

Continuing the synopsis of these answers, it is alleged that the executors filed an account of their proceedings from August, 1916, to December, 1921, which was settled by decree of September 21, 1922; that it and the decree recited that these same four individuals were the only persons interested. (E 12; R 25.)

That section 262 of the Surrogate's Court Act provides that all contingent remaindermen must be cited on a judicial settlement and if the petitioner had possessed any interest, he would have been cited therein, but he was not so cited. (E 13; R 26.)

That in December, 1923, the executors filed an account of their proceedings to December 1, 1923, which was settled by decree dated October 6, 1924; that only the same four were cited and the petition and decree contained the same recitals as to parties in interest as its predecessor. (E 14; R 27.)

That in February, 1925, Laimbeer, the removed trustee, filed an account covering the period from December 2, 1923, to December 30, 1924, which was settled by decree of June 18, 1925. (E 15; R 28.)

That in July, 1926, a compulsory proceeding resulted in the filing of an account to September, 1926, which was settled by decree of January 15, 1927. (E 16; R 29.)

That in January, 1931, an accounting of acts to December 31, 1930, was filed and settled by decree of March 12, 1931. (E 17; R 20.)

That in the last three enumerated accountings only the same four individuals were cited. No others were named. The interesting observation is included that " Knowledge of the statutes was chargeable to the court and to the petitioner and to all the prospective heirs of Herman Grube, Sr." (E 18, R 31.)

That the petitioner had knowledge of all or some of the account-ings and of the allegations therein respecting the parties interested in the estate and asserted no interest until about two months ago. (E 19; R 32.)

That on July 5, 1923, the petitioner and Herman, Jr. (now deceased), came to this country and participated in conferences representing Herman, Sr., at which the rights of all beneficiaries were discussed and Herman, Jr., in the presence of petitioner, signed certain papers as attorney in fact for Herman, Sr., including one attached to the answer marked Exhibit A. This approved of the account filed in January, 1922, and the decree of September, 1922, with modifications. It also read that Herman, Sr., consented " to the construction of the will of the decedent as set forth in the opinion of the Surrogate rendered on or about June 15, 1922," to the withdrawal of an appeal and the making of certain stipulated payments. (E 20; R 33.)

It may further be noted in passing that the opinion of this court dated June 15, 1922, construing the will, to which reference is made in stipulation, " Exhibit A," so far as it in any wise refers to the subject, reads as follows:

" Edith Grube Herrington and Henry C. Grube are entitled to the income which, under the terms of the trust created by the Sixth Paragraph of decedent's will, was intended for their father, Andrew Grube, a brother of the decedent who predeceased him. (Decedent Estate Law, § 29; *Matter of Hafner*, 45 App. Div. 549.) * * *

" The life tenant, Lulu May Clark, by the terms of the will, is entitled to a payment of $9000 each year out of the net rents collected from the real estate which is the subject of the trust set up in the Sixth Paragraph. If there be a deficiency in any year, it must be met out of surplus income accruing in subsequent years."

The answers continue, that in January, 1925, Herman, Jr., and petitioner again came to this country representing the interest of Herman, Sr., and discussed the rights and interests of the various beneficiaries as included in the decree of October, 1924, and Her-man, Jr., in petitioner's presence signed various papers affecting the interest of Herman, Sr.; that at such time they consulted independent counsel as to those who had an interest under the will. (E 21; R 34.)

That in January, 1925, Herman, Jr., as attorney in fact for Herman, Sr., in the presence of the petitioner, " after a discussion as to the absolute vested interest in the estate of their father," executed the assignment affecting Herman's interest now held by Mr. Rubin. (E 22; R 36.)

The assignment in question, which is recorded in liber 10 of "Transfers and Mortgages of Interests" of this court, at page 306 reads in part that Herman Grube assigns "the sum of eight thousand ($8,000) dollars without interest, being part of the total amount due and payable or which I may receive under the will or from the estate of my brother Henry Grube, deceased, or to which I may become directly or indirectly entitled under the said will or from the said estate upon the termination of the prior estate limited in said will, or as one of the next of kin or heirs at law of said Henry Grube, deceased."

That simultaneously a confession of judgment was executed and delivered and that subsequently similar documents executed by Herman, Sr., himself, were executed and delivered. (E 23; R 37.)

That in the 1926 accounting Laimbeer requested a construction of the assignment. (E 24; R 38.)

That in the decree made in December, 1926, it was adjudged that the instruments were "valid instruments of assignment * * * of principal in the hands of the trustee to the extent set forth in said respective instruments." (E 25; R 39.)

That in the 1921 accounting Lulu May Clark requested a construction of item "sixth" of the will, in as far as it applied to her gift. (E 26; R 42.)

That the heirs of Herman, Sr., were not cited in that proceeding but had actual knowledge thereof. (E 27; R 43.)

That on September 21, 1922, a decree was made construing her rights as requested, the language thereof being given. (It may be noted that such language referred to income only.) (E 28; R 44.)

That the heirs of Herman, Sr., knew or were charged with knowledge of all of the foregoing matters and that petitioner's failure for twenty-two years to intervene in respect of the situation or to make any demand estops him from claiming any interest at the present time and amounts to a practical construction of the will, which is now the law of the case. (E 30; R 40.)

That any other construction than that according Herman, Sr., an absolutely vested interest is barred by the construction of the assignment by the court, by the failure to make his heirs parties to the proceedings, by their acquiescence in such procedure and by the participation by the petitioner and Herman, Jr., in the execution of the assignment on behalf of Herman, Sr. (E 31; R 41.)

The allegations of fact of this answer, reduced to their lowest terms, demonstrate that various proceedings were had in this court from September, 1917, to date, to which the heirs of Herman, Sr., were not made parties nor cited; that the pleadings in these proceedings contained allegations construable as alleging that they

possessed no interest in the remainder of this trust and that the orders and decrees entered therein followed such allegations; that in certain instances, at least, they were aware of the institution of such proceedings or the entry of such decrees and did not apply to the court to be permitted to intervene therein, nor did they take any steps to procure the vacating of such orders or decrees. The only additional showing made, assuming that the allegations of the answers are true, which assumption must be indulged for present purposes, is that in July, 1923, and in January, 1925, Herman, Jr., and the petitioner came to this country and participated in certain discussions of estate affairs on behalf of their father, Herman, Sr. On the earlier occasion Herman, Jr., as attorney in fact for his father, signed a stipulation assenting to the fixation of certain current income rights of his father and to a construction of the will which in no wise purported to determine anything respecting the devolution of the principal here in question. On the second visit a temporary assignment of certain of their father's rights was made to the assignors of Mr. Rubin on behalf of their father in adjustment of his obligations to his attorneys for their representation of him in the affairs of the estate.

It would, indeed, be remarkable if a " practical construction " of the will on their part or any general estoppel to assert their actual rights could be predicated on any such tenuous demonstration. It is primary that the rights of an individual cannot be affected by any judicial proceeding to which he has not been made a party and in which he has not appeared. So far as he is concerned any such proceeding is a complete and utter nullity. (*Davis* v. *Cleveland, C., C. & St. L. R. Co.*, 217 U. S. 157; *Big Vein Coal Co.* v. *Read*, 229 id. 31; *Muslusky* v. *Lehigh Valley Coal Co.*, 225 N. Y. 584, 587; *People ex rel. Republican & J. Co.* v. *Lazansky*, 208 id. 435, 437; *Matter of Killan*, 172 id. 547, 556; *Matter of Galvin*, 153 Misc. 11, 12; *Universal Credit Co.* v. *Blinderman*, 159 id. 802.) " It is a first principle in the administration of justice, that no one shall be condemned, nor be made to suffer, either in his person, fame, or estate, before he has had an opportunity to be heard in his defense." (*Oakley* v. *Aspinwall*, 4 N. Y. 513, 518.) Repetition of a void and nugatory act cannot metamorphose it into validity any more than the addition of a series of ciphers can produce a sum greater than that represented by one only.

The theory of these answering respondents that the fundamental prerequisite to valid adjudication of acquirement of jurisdiction can be circumvented by indirection is novel and naive in the extreme. It is apparently their position that although no single one of the

recited proceedings could accomplish any impairment of the rights of these uncited parties, yet because, it is said, they purported so to do, an active duty was imposed upon the petitioner and those in like position to intervene for the vindication of rights which had not been made the subject of effective attack. The court is familiar with no authority which has determined the existence of any such duty. " Mere reticence does not establish estoppel in the absence of any act tending to mislead, unless there is an apparent duty to speak, and the silence might operate as a fraud and is actually misleading." (*Hartford Accident & Indemnity Co.* v. *Oles*, 152 Misc. 876, 879.) " No duty to speak arises from the mere fact that a man is aware that another may take an action prejudicial to himself if the real facts are not disclosed." (*Lord Construction Co.* v. *Edison Portland Cement Co.*, 234 N. Y. 411, 416.) " The law does not withdraw its remedies from a person against whom a wrong is committed merely because he in silence and without proclamation or complaint recognizes and endures the wrong." (*Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458, 461.) In *Viele* v. *Judson* (82 N. Y. 32, 39) the court expressly repudiated the suggestion that " a man may be estopped for not beginning a lawsuit."

Certainly none of the ten authorities tendered in support of the anomalous doctrine advanced by these answers supports it even in a remote degree. Since the supposed validity of this defense has been so emphasized by both of the main answering respondents, the facts and determinations of the authorities upon which they base their position require analysis.

The first decision urged is that of Surrogate DELEHANTY in *Matter of Hennessy* (155 Misc. 53). In that case the fifth item of the will purported to devise a specified parcel of realty in trust during the life of testator's son or until he reached thirty, which age he had attained at the death of the testator. The ninth item directed all property not otherwise disposed of to be sold and the proceeds used to pay any mortgage obligations of the testator and the balance to be divided into three equal shares, two of which were to be paid to his daughters and the third held in trust for the son with remainder to his issue. The realty devised by the " fifth " item was never sold. The court, after determining that if the question were open, it must be held that this realty fell into the residuary, held that the question was not open, since in three prior decrees of accounting *to which the son had been a party* it had been so dealt with and he had made no objection to such inclusion and took no appeal from the decrees. Wherefore, after this extended period, his acquiescence in the determinations in which he had

participated amounted to an estoppel against him and those occupying his position, to assert any other construction.

The next cited authority, *Matter of Parker* (118 Misc. 121; affd., 204 App. Div. 876; affd., 236 N. Y. 583) is to like effect.

The question of construction involved was whether a codicil which directed that " the name ' Ransom J. Parker ' one of the Executors * * * be stricken out " and two others substituted, effected merely his elimination as executor but also deprived him of devolutionary rights. Three and a half pages of the opinion are devoted to an exhaustive analysis of the reasons for adopting the former construction on the merits. Parts of two paragraphs then add that this construction was acted upon in several previous accounting proceedings and that " in any one of these accountings this question could have been adjudicated upon an objection by any of these parties who now raise the question." It is thereupon determined that they have been guilty of unreasonable laches and that " it would now seem too late to raise the question."

The demonstration in *Matter of Von Bernuth* (127 Misc. 705) is that the testatrix created three trusts for her three children in the hands of her husband as trustee providing that if any of such children died prior to the age of thirty without issue, her share should be added *pro rata* to the shares of the others. One did so die and the trustee in an accounting to which all of the others were parties showed that he had added the principal fund of the deceased to the principals of the other trusts and secured a judicial settlement of his accounts on that basis. On a subsequent accounting after another child had attained the age of thirty and was, under the terms of the will, entitled to her principal outright, the trustee questioned the propriety of his own act in adding the principal of the fund of the deceased daughter to those of the others. The court, on a construction of the will held such procedure to have been correct. It also said (at p. 708): " Having transferred the fund held in trust for Constance to the shares held in trust for the surviving sisters, and having himself requested a judicial settlement of his account confirming his doings in all respects, he is estopped thereby from now attacking the validity of his own acts. The decree entered December 7, 1925, settling his account as trustee, acquiesced in by all the beneficiaries under the will, who were made parties to that proceeding, is final and conclusive as to all matters embraced in the account and decree."

In *Starr* v. *Selleck* (145 App. Div. 869; affd., 205 N. Y. 545) the will erected a trust, the income of which was to be used for the maintenance of a club house for the social betterment of young men on the west side of New York city. During his life the testator

had established such an institution, called "Gordon House," which he had maintained. The sole next of kin both executed instruments renouncing any interest in the trust property and requesting the trustee to execute the trust for the benefit of "Gordon House." In the present accounting one attempted to rescind such action. The opinion first determined on the merits that the trust was valid. The court then added (at p. 874): "But whether or not the trust be protected by the statute, I think the trial court was right in holding that the appellant cannot now be heard to assert its invalidity. When the will was probated the doubtful character of the trust clause under consideration was well known to her. The only other heir at law and next of kin desired to carry out the wishes of the testator. The appellant receives an annuity of $1,500 under the testator's will. Doubtless appreciating his kindness in so amply providing for her, she also manifested her desire to cary out his wishes as to the trust and to that end signed the agreement that it should be carried out, and executed quitclaim deeds at various times so that the real estate falling within the trust could be sold * * *. If the trust is void, then Theodore B. Starr committed a devastavit of the estate in paying the income for nearly six years to Gordon House. Having made these payments, relying upon the declaration of the appellant, and at her request as expressed in the agreement, she is now estopped from making any claim to such income, and I think if she is estopped as to the income, she is likewise estopped as to the corpus. Starr had as much right to his share in the trust property as did the appellant. The relinquishment of her rights in the property was, upon its face, final and irrevocable and he, relying upon this, also gave up all his rights in the same property. He changed his position."

The question litigated in *Matter of Oltmans* (53 Misc. 208) was as to whether on the death of a fiduciary, an administrator *c. t. a.*, or a successor trustee, should be appointed in respect of a will which was ambiguous as to whether a gift in trust or a life estate was intended. The opinion reads (at p. 209): "At the time of the settlement of the accounts of the executors, the parties seem to have mutually elected to treat the entire property as a trust estate to be held by the executors as trustees."

At page 210: "As, by the previous decree herein, the parties have elected to regard a trust as having been created and the surrogate has so ordered, the best interests of all concerned will be most effectively protected by continuing the estate funds in the hands of trustees."

In *Bacon* v. *Sayre* (84 Misc. 462; affd., 164 App. Div. 909; affd., 218 N. Y. 725) the decedent left a will bequeathing the residue of her estate " absolutely " to six named children with additional provisions that if any should die leaving issue, the share of the parent should go to such issue but if any should die without issue, it should pass to the other brothers and sisters and not to the husband of the deceased child. One-sixth of such residue was turned over " without reservation or condition " to each child in 1883. No question was raised by any one in respect of this manner of disposal, and each used the portion of the property received as his own. In 1911 one of the distributees died without issue and the question was then raised by the son and executor of another and by his trustee in bankruptcy as to whether the proper construction of the will should not be to give the children merely life estates with gifts over to their issue or to the other children of the testatrix on their respective deaths. The court determined the question on the merits in a full discussion covering four pages and then added: " I come to that conclusion all the more easily because it harmonizes with the construction apparently put upon the will by the family, especially this plaintiff." The opinion then develops the fact that in 1887 one of testatrix's other daughters died childless, that plaintiff was her executor and dealt with the property which she had received as her distributive share in a manner directly contrary to his present contention.

The facts disclosed in *Dunlap* v. *Gill* (23 Misc. 418) are that a devise of certain realty was made to " Mary Ely, otherwise called Mother Jerome." The will stated testatrix's purpose that the property be devoted to a hospital under the charge of the Sisters of Charity. She expressly refrained from erecting a trust but expressed her unreserved confidence " in the honor and conscience of said devisee." Under the rules of her religious order all property received by the devisee became that of the order itself. She repeatedly spoke of the property as belonging to the hospital, the order for a time paid the taxes thereon and then obtained tax exemption on the basis that it was the property of the order. All proceeds therefrom were continuously devoted to the charity. On the death of the devisee one of her heirs at law asserted rights therein. It was held that by her acts the deviseee was estopped to assert personal ownership and that her heir at law, claiming through her, was equally estopped.

The facts and determination in *Thorn* v. *DeBreteuil* (179 N. Y. 64) are too remote from those disclosed in the instant case to warrant present repetition in full since they are adequately reflected in the second headnote of that case. Suffice it to observe that the

determination that no *de novo* construction of the will was permissible was predicated upon the fact that the persons seeking it had been parties to a construction proceeding in which the interpretation in question had been decreed and that the fiduciaries had acted pursuant to such interpretation and that their accounts, reflecting such procedure, had, on several occasions, been judicially settled in proceedings to which the present objectors were parties.

In *Reid* v. *Sprague* (72 N. Y. 457) the testatrix devised and bequeathed her entire estate to her daughter Catherine with directions that during the life of her daughter Helen, who was an incompetent, its income should be expended for her benefit and on her death the principal should become the absolute property of Catherine. The latter conveyed a parcel of the property, the deed containing a recital to the same general effect and received a purchase-money bond and mortgage. The interest therefrom was applied by her for over twenty years for Helen's support. Thereafter she assigned the bond and mortgage as security for a debt of her husband. An action to void the assignment, so far as the income was concerned, was instituted on behalf of the incompetent and judgment was awarded. In affirming such judgment, the Court of Appeals held that since Catherine had for twenty years acted on the construction of the will that it created a trust in her as trustee for the life of her sister she could not now assert another construction and, therefore, had no power to assign a greater interest in the bond than that which she was thus deemed to possess, namely, that of a remainderman.

The final authority cited as in supposed support of the defense of " practical construction " is *Cushman* v. *Cushman* (116 App. Div. 763) one issue in which concerned the continued existence of a trust to a son. Four accountings to which the son was a party had been had in the interval of thirty-five years " wherein the court disposed of the matters upon the theory that the trust existed, and throughout this son acquiesced." The court after construing the will on the merits to the same effect added, in view of this demonstration, " the present action is in repudiation of the long continued course of contemporaneous construction, and * * * its equities do not appeal to the vigilance of a court of equity."

The foregoing are apparently the only determinations which the diligence of counsel has disclosed, which, in their estimation, are pertinent precedents for the thesis that a person potentially interested in an estate may, in effect, be estopped from claiming the fundamental right of his day in court for the adjudication of his rights. That none of their determinations support the position is obvious. That certain language contained in some of them,

when wrested from its context, may offer some semblance of encouragement thereto in the estimation of an ardent protagonist, is possible. As thus divorced from its connection such language is, however, notoriously misleading and ineffective as a medium of persuasion or a basis of adjudication. (*Dougherty* v. *Equitable Life Assur. Soc.*, 266 N. Y. 71, 88; *Gwynne* v. *Board of Education*, 259 id. 191, 196; *Crane* v. *Bennett*, 177 id. 106, 112; *Colonial City Traction Co.* v. *Kingston City R. R. Co.*, 154 id. 493, 495; *Matter of Suderov*, 156 Misc. 661, 664, 665; affd., 249 App. Div. 763; affd. 274 N. Y. 525; *Matter of Davison*, 137 Misc. 852, 858; affd., 236 App. Div. 684; *Matter of Galloway*, 139 Misc. 183, 184.) In no single one of the cases cited was it determined that a " practical construction " had been attained or that a resulting estoppel existed in which the person against whose contention this result was reached had not been a party to one or more (and usually many more) judicial proceedings in which the result had been attained and he had acquiesced therein.

So far as concerns the plea of practical construction or any general estoppel against the petitioner to advance the contention that he possesses a vested remainder interest under the " sixth " item of this will, the court determines the separate defense of the public administrator and the " Fifth Separate Answer " of Mr. Rubin to be legally insufficient.

In this connection, however, the court must make an exception applicable to the interest of Mr. Rubin only, respecting the allegations of paragraph " 36 " of Mr. Rubin's answer when these are read in conjunction with paragraph " 32." Paragraph " 36 " reads in part as follows: " Upon information and belief, that on January 17, 1925, Herman Grube, Sr., by Herman Grube, Jr., as his attorney in fact, in the presence of the petitioner, Theodor Grube, after a discussion as to the absolute vested interest in the estate of Henry Grube, deceased, of their father, Herman Grube, Sr., for legal services rendered to Herman Grube, Sr., affecting his interest in the estate, executed and delivered an assignment of part of the interest of Herman Grube, Sr.," to Mr. Rubin's assignors.

In paragraph " 32 " Mr. Rubin alleges that at no time prior to about two months ago did the petitioner ever assert any claim to rights as a remainderman of this trust.

As was noted at the start of the present discussion, the respondent is entitled on this submission to have the allegations of this answer accepted as true and to the benefit of any logical inferences deducible therefrom. To this court the allegations noted and their logical inferences assume the following aspect: That Mr. Rubin's assignors

possessed a claim against Herman, Sr., for legal services rendered, which, on January 17, 1925, was in process of adjustment; that in the course of such adjustment the rights of Herman, Sr., as an absolutely vested remainderman were discussed in the presence of the petitioner, who failed to assert any conflicting rights in himself, and that as a result of such discussion the matter of Herman, Sr.'s obligation was adjusted by the giving to Mr. Rubin's assignors of the assignment which covered in part the interest which Herman, Sr., may receive " upon the termination of the prior estate limited in said will."

If the court is correct in its assumption that the answer fairly raises this issue, it would follow that if its truth were demonstrated upon a trial of the implied traverse by the inferred reply, the petitioner, as against Mr. Rubin, and Mr. Rubin alone, would be estopped to assert the status of a vested remainderman, since this would potentially deprive the latter of a portion of the satisfaction of the debt of his assignors which had been accepted by them in reliance upon the belief, fortified by the failure of the petitioner to assert his claim, that Herman, Sr., possessed a vested interest in such remainder.

The principle upon which the doctrine of estoppel by silence is predicated is succinctly stated in *Rothschild* v. *Title Guarantee & Trust Co.* (204 N. Y. 458, 462) as follows: " A fraudulent purpose or a fraudulent result lies at the basis of the doctrine of equitable estoppel through silence or inaction. Actual or intended fraud is not an element essential to it. Neither affirmative acts or words nor silence maintained with the fraudulent intention of deceiving are indispensable elements of it. But it arises only when, relatively to the party invoking it or his privies, the omission to speak is an actual or constructive fraud. Its existence requires that the party against whom it acts remained silent when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of the truth would prevent, and that injury of some nature or in some degree would result."

This principle has received uniform and continuous application in situations in which the owner of property stood by in silence and permitted another to sell or incumber his property to another. In such cases it has been determined that he was estopped to assert his ownership as against the vendee or pledgee. (*Cheney* v. *Arnold*, 18 Barb. 434, 440; affd., 15 N. Y. 345; *Thompson* v. *Blanchard*, 4 id. 303, 309; *Hubbard* v. *Briggs*, 31 id. 518, 533; *Erie County Savings Bank* v. *Roop*, 48 id. 292, 298; *Best* v. *Thiel*, 79 id. 15, 18; *Conde* v. *Lee*, 55 App. Div. 401, 404; affd., 171 N. Y. 662.)

Such, in substance, would here be the situation, if Mr. Rubin is able to substantiate his assertions, since the effect of the transaction would be that Herman, Sr., through his attorney in fact, had induced the attorneys to settle the claim which they held against him by accepting, in part, an assignment of his asserted vested remainder rights under this trust, while the petitioner stood by and permitted the consummation of the transaction. Under such circumstances, if it were to be determined that the interest of Herman, Sr., was in fact subject to a condition and that his estate, or a portion thereof, had vested in the petitioner, the latter would be estopped to set up his interest to the extent that it would affect injuriously the assignees or any party claiming under them.

There remains for consideration only the defense numbered " second " in the answer of Mr. Rubin. This recites that the petition raises an issue of construction of the will but contains no express request therefor and that the citation issued in the inauguration of the proceeding contains no notice thereof; that the only express request for a construction is contained in the answer of the successor trustee; and that the executrix of Lulu May Clark, the life beneficiary, is not a party to the proceeding. The conclusion is then stated that in her absence this court is without jurisdiction to construe the will under section 145 of the Surrogate's Court Act " as this Court decided in *Matter of Neimark*, reported in New York Law Journal of June 16, 1938."

The court decided no such thing in the memorandum decision to which reference is made, as would have been readily evident had the pleader troubled to read the earlier memorandum respecting the same case, which appeared on page 2415 of the Law Journal issue for May 18, 1938, of which the memorandum cited was a decision on reargument. All which was determined in the memorandum to which reference is made was that a general construction of the will could not be sought for the first time in a motion for and under the guise of a reargument of an application which initially had sought merely to compel a trustee to make a specified payment under a particular clause of the will. The effect of the particular clause had been construed in the earlier decision and had been adverse to the applicant who, on the motion for reargument, endeavored to escape therefrom by invoking other provisions of the will which had not been urged in the original application.

The law is well settled that the purpose of a reargument is to demonstrate to the court " that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked; or that there has been a misapprehension of

the facts." (*Bolles* v. *Du ff*, 56 Barb. 567, 574; to like effect, see *Banks* v. *Carter*, 7 Daly, 417, 423; *Matter of Crane*, 81 Hun, 96, 98.) Such a motion may not be made on an additional showing of facts, unless they have occurred since the making of the previous motion, unless permission to that end has expressly been accorded. (*Haskell* v. *Moran*, 117 App. Div. 251, 252; *DeLacy* v. *Kelly*, 147 id. 37, 38.) Ordinarily " the motion for a rehearing must be based upon the original papers." (*Hauser* v. *Herzog*, 141 App. Div. 522, 524.)

It was upon these principles and upon no others that this court's decision was predicated in the cited memorandum opinion. They possess no conceivable applicability to the present case.

The question of the status of any would-be litigant in the Surrogate's Court lies at the very threshold of any litigation and must be determined as a preliminary matter. (*Matter of Cook*, 244 N. Y. 63, 72; *Matter of Hagen*, 119 Misc. 770; affd., 206 App. Div. 682; *Matter of Hamilton*, 76 Hun, 200, 204; *Matter of Quick*, 147 Misc. 28; *Matter of Herle*, 157 id. 352, 354, 355.) The authority to make such determination is inherent in the general grant of jurisdiction to the court under section 40 of the Surrogate's Court Act. If such decision involves an incidental interpretation of any document, such fact is a wholly immaterial circumstance, entirely divorced in connection from the statutory jurisdictional requirements attendant upon a proceeding for the general construction of such document.

As a matter of policy, courts will ordinarily require that all persons potentially interested in a pending question shall be made parties to the proceeding. This policy is not due, however, to any inherent lack of power to conduct the inquiry in the absence of some of their number, but in order to avoid the necessity for a relitigation of the same issue on another occasion in order to foreclose the rights of such original non-parties.

Whereas, therefore, the objection, in the form in which it is interposed is nugatory, it has the effect of directing the attention of the court to the question of whether or not all persons who may have any claim to an interest in the distribution of the remainder of this trust are parties to the proceeding or whether there is any possibility, no matter how remote, that some person, not a party, may subsequently assert a claim that a portion of his property has been diverted from him to the petitioner, assuming that the decision on the present application were to be favorable to the latter.

In this evaluation, the language of the " sixth " and " seventh " items of the will is of importance. These read as follows:

" *Sixth.* I give, devise and bequeath to my executors and trustees mentioned herein the said property situate at and known as Nos. 414–416 Fulton Street, Brooklyn, in trust, nevertheless, to collect the rents, income and profits arising therefrom and after paying all proper charges on said property, to pay over to my said niece, Lulu May Clark, the sum of Nine thousand ($9,000) dollars annually, in equal monthly payments and to pay the remainder of said net rents to my two brothers, Herman Grube of Bochum, Germany and Andrew Grube, of Rhinebeck, New York, in equal parts, in equal monthly payments. I direct that said payments to my niece, Lulu May Clark, shall continue as long as she lives. In case of her death, I direct my executors and trustees to sell the said property Nos. 414 and 416 Fulton Street, Brooklyn, at private or public sale, and after the payment of all proper charges, to divide the net proceeds equally between my two brothers above named or their heirs.

" *Seventh.* All the rest, residue and remainder of my property, real or personal, and wherever situated, I give, devise and bequeath to my niece, Lulu May Clark, absolutely."

The parties to the present proceeding in the statement of their opposing contentions respecting the remainder devolution of the trust, which is expressly treated only in the final sentence of item " sixth," have refrained from any comment on the extremely unusual phrase employed in the first five words of this sentence. It reads " *In case of* her death," that is *in case of* the death of Lulu May Clark. The extraordinary nature of the language employed immediately raises a question as to the thought which the testator had in mind in its use. He knew that at some time or other Lulu May Clark must die. It is at least arguable that if he had nothing in mind beyond a direction that when her life estate had terminated, the succeeding directions for remainder devolution should become effective, that he or his draftsman would have employed the usual apt phraseology of " *Upon* her death " or some such equivalent. It is further arguable that the phrase actually employed is more nearly an equivalent of " If she shall die " than the usual " upon her death " and that, in consequence, since she, like all other beings, was assured of the termination of her mortal existence, the testator must have had in mind, in the use of this introductory phrase, the thought of her death before the date upon which the previous directions respecting the erection of the trust were to become effective. In other words, that by this final sentence he was supplying a direction respecting the devolution of the Fulton street property if Lulu May Clark predeceased him. This point in the argument having been attained, it would be but a short step

to the assertion that the entire direction respecting devolution of the fee or the proceeds of sale thereof was limited upon the supposition or condition that Lulu May Clark predeceased him, and that since this event had not transpired, the " sixth " item contained no effective direction in respect thereof, in consequence of which such fee would devolve pursuant to the residuary item of the will to Lulu May Clark.

The court is not to be deemed to intimate a belief that such is the proper interpretation of the composite direction. All that is suggested is that an argument possessing distinctly more than colorable plausibility is capable of advancement by the representative of the estate of Lulu May Clark that her testatrix was entitled to the remainder in its entirety and that in such a situation the court should decline in her absence to consider an application by any other person to be paid a portion of the assets to which she may lay claim.

The noted defect in the proceeding whereas vital from the standpoint of the court is not necessarily fatal. The petitioner will be accorded thirty days from the entry and service of an order to be entered hereon to file an amended petition making the executrix of Lulu May Clark a party to this proceeding and procure the issuance and service of a supplemental citation directed to her. In the event of his failure of compliance with this condition or the demonstration of adequate cause therefor, a decree may be submitted dismissing this proceeding for defect of parties.

Enter order on notice in conformity herewith.